## Pickering v. Simpkins.

### Same v. Sexton.

(Decided Oct. 12, 1937.)

ELDRED & ELDRED and J. S. HODGES for appellant.

C. C. MOLLOY for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The cases arise from a collision of motor trucks on the afternoon of October 28, 1935, between Earlington and Dawson Springs. One truck was owned by J. A. Simpkins and driven by A. K. Sexton. The other was owned by William G. Pickering, doing business as the Merchants Service Line, and was driven by Virgil Francis. With Francis in the cab were his wife and a negro named Merriwether. The latter was killed and the others injured. Simpkins and Sexton filed suits against Pickering and he counterclaimed for damages to his machine. The cases were consolidated and the court

gave a peremptory instruction for the plaintiffs and submitted only the question of damages. The verdicts were $1,336.99 in favor of Simpkins, and $1,000 in favor of Sexton.

The Simpkins truck, a 1½-ton Chevrolet, was heavily loaded with coal, and proceeding up a steep grade, westwardly on the north and outer side of a sharp curve. All the evidence is that the machine was traveling 15 miles an hour, and when it was struck its outer wheels were on the shoulder of the road. The tracks indicated it had slid about 2 feet and then cut into the bank. The Pickering car of the same make and capacity was heavily loaded with scrap iron and was going eastwardly down the grade with an obstructed view. All of the evidence, including that of the driver and his wife, was that it was going 35 miles an hour and swung to the outside of the curve, which was its wrong side of the road, and struck the other car practically head-on. Both machines were demolished. It appeared from the conditions that the right front wheel of the Pickering truck hit the left front of the other one. The respective drivers testified they did not see the other car until within perhaps 50 steps. After the collision the front of the Simpkins car was in the ditch and over against the embankment with its body diagonally across the road. The Pickering car was almost at right angles with the road. Coal was scattered about, some of which was on the other side of the road.

There was no conflict in the evidence. It proved a clear case of negligence on the part of defendant's driver, and there was no evidence of contributory negligence on the part of either plaintiff. Such being the case, the court properly gave a peremptory instruction for the plaintiffs. Where such an unusual condition is presented, it is the duty of the court to adjudge a recovery as a matter of law no less than it is its duty to direct a verdict for the defendant if a plaintiff fails to prove negligence on his part. Rammage v. Kendall, 168 Ky. 26, 181 S. W. 631, L. R. A. 1916C, 1295.

The argument of the appellant against the propriety of the peremptory instruction is that there can be no assumption of negligence or, if negligence be proven, no assumption that it was the proximate cause of the injury sustained. It is not claimed that the defendant's driver was not proven to be guilty of negli-

gence. The argument is directed to the assumption by the court that it was the proximate cause of the collision and that there was no evidence of contributory negligence on the part of plaintiffs. The defendant's car was traveling 35 miles an hour around an obstructed curve. The statute makes the proof of speed of a passenger automobile greater than certain rates at different places only prima facie evidence of negligence (section 2739g-51) but, as to motor trucks of the weight and at the place involved in these cases, the statute makes a speed greater than 30 miles an hour an absolute violation of the law. Section 2739g-86; Nehi Bottling Company v. Flannery, 264 Ky. 68, 94 S. W. (2d) 97; Tate v. Collins, 266 Ky. 322, 98 S. W. (2d) 938. The difference may be important. The appellant relies upon Knecht v. Buckshorn, 233 Ky. 329, 25 S. W. (2d) 727, where it was said that proof of excessive speed of an automobile merely created the presumption of negligence, and that it must further appear from the evidence as a reasonable inference that the injury complained of resulted proximately from the excessive speed. In the cases at bar, speed of the defendant's truck, in violation of the law, was only one factor. His truck went over to the wrong side of the road and struck the other machine where it had the lawful right to be  There was no question of fact of the driver's negligence. There could be none other than a reasonable conclusion that it was the proximate cause of the collision. Cases cited by the appellant in which it has been said that the act of negligence was not in itself conclusive of the plaintiff's right to recover because of the question of proximate cause are not in point. In them there was room for a difference of opinion.

The fact that coal was scattered all over the road after such a terrific collision is not evidence that the plaintiffs' truck was on the wrong side of the road. Just before the collision Simpkins was engaged in making some calculations on paper. When the defendant's truck was perhaps 50 feet away, his driver made an exclamation and he looked up and saw the other car right on them. It is submitted that Simpkins should have been maintaining a lookout and his failure to do so was contributory negligence. Granting every possible deduction and argument, the stubborn fact remains that, had he been maintaining an alert lookout or actually assisting the driver, he could not have avoided the col-

lision. The driver put his truck off the road and into the ditch and Simpkins could have done no more.

Simpkins had bought and paid for his truck but was not certain that he had received a bill of sale. Section 2739g-14, Kentucky Statutes. It is argued that such failure and the consequential assumption that he had not registered the automobile in his own name (section 2739g-2a, Statutes) constituted him and his driver trespassers upon the highway; hence that they were not entitled to recover damages for their injuries sustained there. A failure to comply with the statute requiring the registration of an automobile does not preclude recovery for injuries received in its operation since such omission has no causal connection with the accident. Moore v. Hart, 171 Ky. 725, 188 S. W. 861; Prichard v. Collins, 228 Ky. 635, 15 S. W. (2d) 497; Marsee v. Bates, 235 Ky. 60, 29 S. W. (2d) 632.

The court excluded from the consideration of the jury testimony of a witness that Sexton had said in his presence on the morning of the accident that he had been out on a party the night before and had been drunk since the day before. It is not necessary to pass on the correctness of the ruling. All the evidence showed that Sexton was not guilty of contributory negligence in any degree, whatever his physical or mental state might have been, so its exclusion from the consideration of the jury did the defendant no harm.

The jury divided its verdicts to allowances for personal injuries, loss of time, hospital and physicians' expenses, and in the Simpkins case to the value of his destroyed automobile.

It allowed Simpkins $100 for loss of time. He was engaged in the business of selling automobiles on commission. The instruction authorized the jury to award him "such a sum as will reasonably compensate him for the loss of time, if any, from his work during his confinement or during the time he was prevented from attending to business by reason of his injuries, same to be measured by his reasonable earning capacity, not to exceed on this item the sum of $200.00." Simpkins was confined to his bed for a week or more and unable to work for five weeks. His income from selling cars ranged from $50 to $150 a week. The appellant maintains that the damages for his loss of time were too remote and speculative to authorize the instruction. The

courts have long ago determined that an injured party may recover for lost time even though he was not working for a fixed salary or certain wages. Previous experience and income from a profession or a business wherein the compensation is commissions or fees, or such as the operation of a farm, is a sufficient basis for the jury to determine the loss arising from having been deprived of the opportunity to pursue such profession or business during a stated period. Gregory v. Slaughter, 124 Ky. 345, 99 S. W. 247, 30 Ky. Law Rep. 500, 8 L. R. A. (N. S.) 1228, 124 Am. St. Rep. 402; C. & O. Railway Co. v. Shanks, 260 Ky. 416, 86 S. W. (2d) 128. It would manifestly be unjust were the rule otherwise. The allowance was well within a reasonable expectation of what the plaintiff could have earned during the period he was laid up.

The sum of $500 was awarded Simpkins for his pain and suffering. He was confined to his bed for two weeks and was unable to work for three weeks longer because of his injuries. He received numerous cuts and bruises in his mouth, throat, knees, and other parts of the body. He had a deep wound 3 inches long in his back over his spine. His doctor visited him once or twice a day during the first two weeks. It was necessary that he be given hypodermic injections of opiates to ease his pain and permit him to rest during a considerable part of the period. At the time of the trial his knee injury was bothering him after much walking or driving. At an examination by his physician, shortly before the trial, he manifested pain when pressure was applied to his kneecap. A physician who made an examination at the same time at the instance of the defendant testified to his numerous scars, but found Simpkins to have fully recovered. We do not consider the verdict excessive.

The jury awarded Sexton $812.50 for pain and suffering. He, too, suffered numerous cuts and bruises. He was confined in the hospital for three days and in bed at home for three weeks. His doctor visited him daily for two weeks and every other day after that for awhile. He was not able to work for two months, and since then had been limited to light labor. He suffered an injury to his kidneys and passed blood for a week or more after the accident. His kidneys, hips, and bruised hand were bothering him at the time of the trial His doctor testified fully as to these injuries and

his condition, and particularly as to pain and suffering from the injuries to his kidneys. He was of the opinion that Sexton had not fully recovered at the time of the trial, which was held nearly seven months after the accident. The doctor who examined him for the defendant, however, found that he had fully recovered. We do not regard this verdict as excessive.

The judgments are affirmed.