**R. A. ROBERTS, Administrator et al.,**
**Appellants,**

v.

**GREYHOUND LINES, INC., et al.,**
**Appellees.**

Court of Appeals of Kentucky.

May 10, 1968.

The administrator of the three passengers in that car sued the administrator of the Rambler driver, the Greyhound Company and its driver.

At the conclusion of the evidence the trial court directed a verdict for the plaintiff administrator of the passengers' estates against the Rambler driver's administrator, and directed a verdict for Greyhound and its driver. Jury verdicts awarding substantial damages were returned for the administrator of the deceased passengers against the administrator of the deceased Rambler driver. Both of these administrators prosecute these appeals, insisting the directed verdict for Greyhound and its driver was error.

There is no dispute about how this accident happened. The Rambler was traveling south and the bus approached from the south over the top of a hill. For some reason that will never be known the Rambler edged over the center line and after traveling there a few seconds, it swung completely into its left-hand lane and traveled in that position for "maybe a half a block" until it struck the bus head-on. There were no cars or other obstructions which would have prevented the Rambler from returning to its proper lane at any time before the collision. It was traveling about 45 to 50 miles an hour.

As the bus approached it was traveling downhill somewhere between 40 and 60 miles an hour. When the bus driver observed the Rambler moving into the wrong lane he promptly blew his horn and applied his brakes. Up until the time of impact he alternately released and applied his brakes and had slowed to about 15 miles an hour at the time of the collision. (Passengers testified he was repeating, "Get back over".) At all times the bus was in its proper lane.

The appellants have trouble pinpointing any negligence on the part of the bus driver. It is suggested he was not keeping a proper lookout but there is no evidence

Louis V. Mangrum, Mayfield, Norman, Englehardt, Zimmerman, Franke & Lauritzen, Chicago, Ill., for R. A. Roberts, Admr.

Boaz & Boaz, Seth T. Boaz, Jr., Mayfield, for Greyhound Lines, Inc., and Leo L. Smith, Jr.

Earle T. Shoup, Paducah, for First Nat. Bank of Mayfield, Admr.

CLAY, Commissioner.

This is a motor vehicle collision case. On a two-lane highway in Graves County, in broad daylight, a Rambler stationwagon in the wrong lane collided head-on with a Greyhound bus. All four persons in the Rambler, including the driver, were killed.

to support such an assertion. It is said that the brakes on the bus were defective. The argument is made that when they were applied the bus skidded a little and the back end zigzagged somewhat. There is no testimony this indicated defective brakes. Apparently the argument is that the brakes were defective because the bus did not come to a complete stop before the collision.

This brings us to the question of whether it was the duty of the bus driver to stop the bus, if he could have done so. We must bear in mind that the bus driver owed the highest degree of care to his passengers, even in an emergency. Ken-Ten Coach Lines v. Siler, 303 Ky. 263, 197 S.W.2d 406. A sudden stop could endanger them and the driver could properly consider this factor in the operation of his vehicle. See Cincinnati, Newport & Covington Ry. Co. v. Rothe, Ky., 252 S.W.2d 668. More important here however is the principle that the bus driver had a right to assume the Rambler would return to its proper lane. It was so held in Dixie Ohio Express Co. v. Eagle Express Co., Ky., 346 S.W.2d 30, and Sellers v. Cayce Mill Supply Company, Ky., 349 S.W.2d 677.

It must be borne in mind that the action of the driver of the Rambler in continuing his course in the left lane was extraordinarily unusual and inexplicable. One might expect an approaching vehicle momentarily to swerve into the wrong lane but it is scarcely to be anticipated that the approaching driver would take dead-aim at a big bus in broad daylight. The disastrous nature of this emergency would not have been evident to one in the bus driver's position until too late to stop, even if he could have done so. In any event the law does not require a motorist confronted with an emergency which he did not create to exercise the same ordered judgment which would be ordinarily required. Moore v. Lexington Transit Corporation, Ky., 418 S.W.2d 245. It may be further

observed that even if the bus had been completely stopped at the point of impact, the collision would have taken place. See Adkins v. Greyhound Corporation, Ky., 357 S.W.2d 860.

It is next contended that a jury could have found the bus driver negligent in failing to pull off the road onto the shoulder. While there was evidence the shoulder was two to seven feet in width, the photographs show that it drops off abruptly and steeply into a ditch. As we have mentioned before, the bus driver owed the highest degree of care to his passengers. To pull off the highway on this rough and sloping shoulder while moving at an appreciable speed clearly would have involved the risk of turning the bus over. Certainly the law could not require a bus driver to so endanger his passengers under the circumstances shown. In addition, we repeat that in the emergency the bus driver was not required to take this course even if hindsight indicated it would have been a proper one.

The last contention is that the bus driver had the last clear chance and the case should have been submitted to the jury on this issue. The argument on this point is simply a combination of the arguments we have heretofore discussed. The Rambler was not in a fixed position of peril until it became clearly apparent it was not going to return to its proper lane. At that time there was nothing the bus driver could do but attempt to stop the bus, which he tried to do as indicated by its skid marks. We can see nothing in this record that even remotely suggests the bus driver had either a *last*, or a *clear*, chance. See Dixie Ohio Express Co. v. Eagle Express Co., Ky., 346 S.W.2d 30.

The administrator of the estates of the deceased passengers raises some question concerning a contributory negligence instruction defining the duties of one of the passengers in the Rambler. Since the administrator recovered a substantial judg-

ment for this passenger, and we are not reversing for a new trial, this issue is now moot.

The trial court correctly disposed of all the issues between the parties.

The judgment is affirmed.

All concur.